(No. 12885.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CONSTANTINE KUHN *et al.* Plaintiffs in Error.

*Opinion filed December 17, 1919—Rehearing denied Feb. 4, 1920.*

1. CRIMINAL LAW—*what does not tend to disprove intent to rob.* The fact that the victim of an alleged assault with intent to rob so defended himself when two men with blackened faces entered his store and ordered him to put up his hands that the men ran away without taking anything of value from him or from the store does not tend to disprove the element of intent to rob.

2. SAME—*when verdict need not include finding as to intent.* Where an indictment charges assault with intent to rob and the evidence shows that the methods employed were those usually employed in cases of robbery by force and intimidation, a verdict of guilty in manner and form as charged in the indictment need not contain a finding as to the intent. (*Garrity* v. *People,* 70 Ill. 83, and *Turley* v. *People,* 188 id. 628, distinguished.)

3. SAME—*when error in modifying instruction does no harm to the defendants.* Error in so modifying an instruction upon the question of circumstantial evidence as to authorize the jury to entirely disregard the circumstantial evidence of the guilt of the defendants if the direct evidence is sufficient to establish their guilt beyond a reasonable doubt may be prejudicial to the prosecution but not to the defendants.

4. SAME—*amendment of record after term cannot rest in recollection of judge.* An amendment of the record after the term can not be made on *ex parte* affidavits or testimony or on the judge's recollection but must be based upon some memorandum, minute or note of the judge or something appearing on the records or files of the court showing facts justifying the amendment.

5. SAME—*verdict is part of the record proper.* The verdict of the jury is a part of the record proper which is kept by the clerk under the direction of the court, and the record of a cause imports absolute verity and is the sole, conclusive and unimpeachable evidence of the proceedings of the court.

6. SAME—*bill of exceptions presents only proceedings not a part of the record.* It is the office of a bill of exceptions to bring before a court of review matters outside of the record proper, and matters properly a part of the record cannot be shown by bill of exceptions.

7. SAME—*general rule in case of conflict between record and bill of exceptions.* In case of a conflict between the record and the

bill of exceptions the record will control as to all matters shown and properly appearing therein, while the bill of exceptions will prevail as to matters properly shown by said bill.

8. SAME—*objection that one juror was not sworn comes too late on writ of error.* If one of the jurors in a criminal case has not been sworn the defendant should object to the return of a verdict, and he cannot stand by and permit the verdict to be returned and then complain, on writ of error, that the juror was not sworn.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding.

FRANK A. McDONNELL, and THOMAS E. SWANSON, for plaintiffs in error.

EDWARD J. BRUNDAGE, Attorney General, MACLAY HOYNE, State's Attorney, and JAMES B. SEARCY, (EDWARD E. WILSON, and JOHN K. MURPHY, of counsel,) for the People.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The plaintiffs in error, Constantine Kuhn and William Wilson, were convicted and sentenced in the criminal court of Cook county under the first count of an indictment which charged them with assault with intent to rob Adam Streit.

Adam Streit on April 17, 1919, had a grocery and market at 4422 Shields avenue, in Chicago, and about ten o'clock in the morning of that day was sitting with his back towards the door reading a newspaper, when the door was opened and somebody ordered "Hands up!" He turned around and confronted two men with their faces blackened and one of them pointing a revolver at him. Instead of holding his hands up he grabbed the revolver, but the men got it away from him and there was a fight, in which Streit was struck several times over the head with the revolver so that there were five cuts on his head and he was covered with blood. He was next to the counter and the show-

case was smashed. People outside were attracted by the
noise of the fighting and the men ran away. Streit followed
them and called to George Rantz, a fruit and vegetable ped-
dler, to go and get them. One of the men shot at Streit
twice, and he lost them between Fifth avenue and Went-
worth avenue. Rantz, the fruit and vegetable peddler, be-
tween the hours of nine and ten o'clock that morning saw
two men about 200 feet from him in an alley between
Shields and Princeton avenues blacking their faces, and the
same men were in Streit's store. When they ran out Rantz
chased them and fired one shot at them, and one of the men
turned and fired three shots at him. The men ran into a
saloon kept by Edward Boyle at 4301 Wentworth avenue.
There was a telephone call at the police station that there
were numerous shots being fired at Forty-fourth place and
Shields avenue, and the "flivver squad" jumped into a Ford
and went there as fast as they could. They arrived in four
or five minutes, and found Streit, covered with blood, stand-
ing in his doorway, and he directed them the way the men
went. At Forty-third street and Wentworth avenue they
were directed by bystanders to the saloon and went there
and arrested the plaintiffs in error.

So far there was no controversy as to the facts, and
the only conflict in the testimony was as to the identity of
the men who committed the assault. The defendants each
denied having anything to do with the crime and interposed
the defense of an alibi. Streit testified that he went to the
police station as soon as he had his head dressed, which was
about an hour after the assault, and identified the defend-
ants, and he was corroborated in that testimony by police
officers. Rantz also identified the defendants without hesi-
tation, and both he and Streit testified positively at the trial
that they were the men who committed the assault. The
policemen each took a door of the saloon, and Frank Green,
one of the policemen, found Wilson in the back room of
the saloon with a towel, wiping black off from his face.

John J. Farrell, another policeman, went to the back door
of the saloon, and when he came in Green had Wilson in
custody.   They went up-stairs and found Kuhn lying on
the front bed-room floor with his face blackened and with
a half-pint bottle of whisky and a towel lying by him.
About one drink had been taken out of the bottle, and when
Kuhn stood up he staggered as if he was very drunk, but
he straightened up and walked down-stairs without any dif-
ficulty.   The opinion of the officers was that he was pre-
tending to be drunk.

The bar-tender at the saloon testified that when they
closed up at one o'clock in the morning of April 17 he asked
Kuhn to stay and help clean up the bar, and they cleaned the
back bar and mirror and sat around until about a quarter
after five and had two or three drinks; that Kuhn then got
a half-pint of whisky and went up-stairs to sleep; that about
5:15 or 6:00 o'clock Wilson came around, and a couple of
fellows who were entire strangers to the witness came in and
invited Wilson to have a drink; that Wilson went to sleep
in a chair, and the men, who had canvas gloves on which
had oil on them, went to a stove and took off the lid and
rubbed soot on the gloves and blackened Wilson without
waking him up, and that he did not even turn around; that
Wilson had six or seven drinks; that the men went up-
stairs with soot on their canvas gloves and left the saloon
about 8:30 o'clock; that Kuhn could not have gone down-
stairs without the witness seeing him; that Wilson woke
up probably about nine o'clock and asked the witness to
give him a drink and was told to go and wash his face,
and that Wilson looked in the mirror and saw he was black-
ened up and asked for a towel.   The blacking on the faces
of the men was in the nature of shoe blacking and in the
fight Streit became smeared with it, and it is pretty clear
that the blacking on the faces of the defendants was not
soot.   The story of the bar-tender was so improbable that
a jury would not be likely to give it any credence.   The tes-

timony that the unknown men blackened with canvas gloves the face of a man who was able to sit up and soon after was practically sober, without waking him up or even causing a murmur, and that they blackened in the same way the face of Kuhn lying on the floor up-stairs, is not credible. The evidence established the guilt of the defendants.

The court admitted in evidence a revolver produced by the saloon-keeper which had recently been discharged, which the saloon-keeper testified belonged to him. He said he had discharged it in the basement to see whether it would go off, and there was no evidence tending to show that it was the revolver used by the defendants or that it had ever been in their possession. The court erred in admitting it in evidence, but it did not prove or tend to prove any issue, since there was nothing peculiar about it and nothing to distinguish or connect it with the crime. The men who committed the crime had a revolver, and whether that was the one or not was wholly immaterial, and as it did not add anything to the testimony the error was harmless.

The first count of the indictment was for assault with intent to rob, and it is argued that the evidence did not show such an intent because nothing of value was taken from the store or from Streit. The method employed and the order given were those usually employed and given in an assault with intent to rob, and the fact that there was no robbery was evidently due to the failure of Streit to obey the order. The fact that he defended himself and prevented the robbery has no tendency to disprove the alleged intent.

In the same connection complaint is made that the verdicts were not sufficient because they did not include a finding as to intent. There were separate verdicts finding each defendant guilty in manner and form as charged in the first count of the indictment, and reliance is placed on the cases of *Garrity* v. *People,* 70 Ill. 83, and *Turley* v. *People,* 188 id. 628, as holding that the manner and form charged in the indictment related only to the assault and did not in-

clude the intent. There may, perhaps, be cases where the evidence entirely fails to show any intent and the court can say that a verdict of guilty in manner and form as charged in the indictment was probably not intended to include intent, but the principles declared in the cases relied upon do not apply to this case in any respect.

Assault with intent to commit robbery is an assault with intent to take money, goods or other valuable thing from the person of another by force or intimidation, and it is contended that the crime charged contained the necessary ingredient of putting Streit in fear, and inasmuch as he had the courage to fight for himself and his property the crime was not made out. The fact that one attacked has the courage to prevent his assailant from robbing him does not tend to prove that the assailant did not intend to take money or property by force and intimidation.

It is complained that the court gave too many instructions on the subject of reasonable doubt, but there were only two which attempted to explain to the jury what a reasonable doubt is, and while it has been considered that such instructions do not illuminate the subject, there is no reason for criticism because two instructions were given instead of only one.

The defendants asked the court to give an instruction to the jury the substance of which was that where a conviction for a criminal offense is sought upon circumstantial evidence, either in part or in whole, the facts and circumstances must be absolutely incompatible, upon any reasonable hypothesis, with the innocence of the accused, and if the jury could not reconcile the facts in the case it was their duty to return a verdict of not guilty. The court refused to give it as asked and modified it by adding: "But if the direct evidence in the case is sufficient to establish the guilt of the defendants beyond a reasonable doubt, then the jury may disregard the circumstantial evidence of the defendants' guilt and find them guilty without regard to the cir-

cumstantial evidence." The instruction as offered was bad, both because it did not apply to the evidence and because it would apply to a case where there was direct evidence of guilt with minor facts and circumstances connected therewith. The addition by the court was a strange one, because it told the jury they might disregard circumstantial evidence of the defendants' guilt if the direct evidence established guilt, which was saying that the jury might disregard part of the evidence tending to prove guilt. It was prejudicial to the prosecution and certainly did no harm to defendants.

The record kept by the clerk shows that a jury consisting of twelve persons named therein, including Charles H. Bingamon, were impaneled and sworn for the trial of the cause, and that the same jurors composing the jury returned into open court "and for their verdict said,"—quoting the verdict as to each defendant. This record shows that Bingamon was one of the jurors impaneled and sworn and that they returned the verdicts. The bill of exceptions contains copies of the verdict as to each defendant, signed by the jurors, and in each of them John Brautigam appears as a signer of the verdict in place of Charles H. Bingamon. Error having been assigned that the verdict was not returned by the same jurors sworn to try the issues, the People applied to the criminal court to amend the record so as to show that John Brautigam and not Charles H. Bingamon was one of the jurors impaneled and sworn to try the issues. The court made an order reciting that on hearing of the motion Charles H. Bingamon testified that he did not serve as a juror but was excused, and John Brautigam testified that he was a juror and was impaneled and sworn to try the issue and signed the verdict, and that the court, having examined the minutes of the trial kept by the court, found from such inspection of the record and examination of the minutes that John Brautigam was impaneled and sworn to serve as a juror and did serve and sign the verdict, and that Charles H. Bingamon was not im-

paneled and sworn and did not serve as a juror or sign the verdict, and ordered that the clerk of the criminal court should correct the record to show that John Brautigam was impaneled and sworn as a juror to try the issues in the case. The record was amended accordingly by the clerk and a transcript thereof was filed in this court. The plaintiffs in error on the hearing of the motion to amend the record took a bill of exceptions showing what was before the court as a basis for the amendment of the record. It shows that they objected to the testimony of Charles· H. Bingamon and John Brautigam and the objection was overruled and the testimony heard. Following that testimony the bill of exceptions recites: "The court will not consider the testimony of the two jurors. I will merely consider the record and the clerk's regular minutes of the trial. The foregoing was all the evidence introduced in said case on hearing of the motion to amend the record. The foregoing were all of the court files, records, memoranda and documents inspected to amend· the record in this case." There is a further statement that the bill of exceptions contained all the evidence introduced and examined and proceedings had on the hearing of the motion to amend the record. While the bill of exceptions recites the testimony of Bingamon and Brautigam, the judge certifies that he did not act upon it and that there was nothing else to act upon except the common law record as originally written, showing that Bingamon was one of the jurors sworn to try the issues and that the same jurors signed the verdict.

An amendment to a bill of exceptions after the term cannot be made when based only on the judge's recollection or on *ex parte* affidavits or testimony. It can only be made where there is some memorandum, minute or note of the judge or something appearing on the records or files of the court to show the facts justifying the amendment. (*Coughran* v. *Gutcheus,* 18 Ill. 390; *Wallahan* v. *People,* 40 id. 102; *Goodrich* v. *City of Minonk,* 62 id. 121;

291 — 11

*Heinsen* v. *Lamb,* 117 id. 549; *People* v. *Anthony,* 129 id. 218; *Chicago, Milwaukee and St. Paul Railroad Co.* v. *Walsh,* 150 id. 607; *Dreyer* v. *People,* 188 id. 40.) The bill of exceptions shows that there was no lawful basis for the amendment of the record as it contains nothing required by the rule, and the judge certifies that it contains all of the court files, records, memoranda and documents inspected. The record must be taken as originally written, and the question is whether the judgment must be reversed on account of the fact that the bill of exceptions differs from the record by showing that John Brautigam signed the verdict while Charles H. Bingamon was the juror sworn.

Both record and bill of exceptions show that a constitutional jury of twelve men was impaneled and sworn and a jury of that number returned the verdict, and the only difference between them relates to one of the panel.

The verdict is a part of the record proper kept by the clerk under the direction of the court, (*McKinney* v. *People,* 2 Gilm. 540; *Cilley* v. *Hawkins,* 48 Ill. 308;) and in this case the record recites that the same persons impaneled and sworn as jurors returned the verdict. It is the office of a bill of exceptions to bring before the court matters outside of the record proper, and matters of record can not be shown by such a bill. (*Joliet and Northern Indiana Railroad Co.* v. *Jones,* 20 Ill. 222; *Safford* v. *Vail,* 22 id. 326; *Zimmerman* v. *Cowan,* 107 id. 631; *McChesney* v. *City of Chicago,* 151 id. 307.) The record imports absolute verity and is the sole, conclusive and unimpeachable evidence of the proceedings in the lower court. (*Keller* v. *Brickey,* 63 Ill. 496; *Wolf* v. *Hope,* 210 id. 50.) The general rule recognized by courts is, that in the event of a conflict between the bill of exceptions and the record proper the record will control as to all matters shown and properly appearing in that record, and as to matters properly included in the bill of exceptions it will prevail over matters shown in the record proper. (2 R. C. L. 153;

4 Corpus Juris, 519.) A verdict may be delivered orally by the jury and entered by the clerk in his record, or it may be reduced to writing and signed by the jury and copied into the record by the clerk.

There have been several cases where the entry by the clerk and a written verdict have not corresponded. In *Long v. Linn,* 71 Ill. 152, which was an action of ejectment, the record made by the clerk recited that the parties appeared and the jury came into court and said that they found for the plaintiff and found the estate of the plaintiff in fee simple, but the bill of exceptions contained the written verdict, which simply found a verdict for the plaintiff and did not find the estate. The court said that the verdict found in the bill of exceptions must be regarded as a verdict of the jury rather than the recitals of the clerk. In *Hirth v. Lynch,* 96 Ill. 409, the clerk in making up the record gave the verdict of the jury as finding for the plaintiff and assessing his damages at a sum stated. The bill of exceptions, however, gave a copy of the written verdict, which simply found for the plaintiff and contained no assessment of damages, and it was held that the bill of exceptions would prevail over the entry of the clerk. In *Allmon* v. *Chicago, Paducah and Memphis Railroad Co.* 155 Ill. 17, the bill of exceptions recited a verdict as returned by the jury which did not conform to the verdict as recorded by the clerk, and it was said that the record proper was the place where the verdict should properly be recorded, and the record was held to prevail over the bill of exceptions on the inference that the insufficient verdict was put in proper form by the court. The decision was that the record would prevail over the bill of exceptions as to the verdict found in the place where it was properly recorded.

Undoubtedly a written verdict remaining in the files would furnish a proper basis for a correction or amendment of the record kept by the clerk in case of a difference between the two, and that would accord with settled prac-

tice.   A finding by the trial court as to which is right, and
an amendment accordingly, would be a rational and logical
method rather than for this court to decide between the rec-
ord kept by the clerk under the direction of the judge, the
contents of which the judge is presumed to know, and a bill  •
of exceptions signed by the same judge.   If, however, for
the purposes of this case we regard the bill of exceptions
as prevailing over the record proper as to what jurors re-
turned the verdict, it must be taken that Charles H. Binga-
mon was among those impaneled and sworn and John Brau-
tigam was one of the jurors who returned the verdict.   If
that were true and objection had been made when the jury
returned into court and the verdict was presented it would
have been fatal, but an objection of that character cannot
be made for the first time in this court on a writ of error.
In the case of *Brewer & Hofmann Brewing Co.* v. *Her-
mann,* 187 Ill. 40, an objection was made that the jurors
were not sworn to try the case because among the names
of jurors who signed and returned the verdict were certain
names not contained in the panel as sworn.   The court said
that the question could not be raised in this court for the
first time and it should have been called to the attention of
the trial court, which was not done.   That was a just and
proper rule, and no person ought to be allowed to stand
by and permit a verdict to be returned and then on a writ
of error say that one of the jurors was not sworn to try
the case.   If a jury returning into court to deliver a verdict
is not the same jury impaneled and sworn, it is the plain
duty of any party to object to the return of the verdict by
such a jury, and if he does not but chooses to speculate on
the chance of a favorable verdict he should not be heard
afterward to make the objection that a juror acted with-
out being sworn.

   The judgment is affirmed.          *Judgment affirmed.*