**People of the State of Illinois, Plaintiff-Appellee, v. Melvin Turner (Impleaded), and Wendell Horne (Impleaded), Defendants-Appellants.**

Gen. Nos. 52,702, 52,703. (Consolidated.)

First District, Fourth Division.

April 2, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (James J. Doherty, Assistant Public Defender, of counsel), for appellants.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Oliver D. Ferguson, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE DRUCKER delivered the opinion of the court.

Defendants appeal from their convictions, after a bench trial, of attempt robbery. Both were sentenced to the Illinois State Penitentiary; Horne for a term of one to four years, and Turner for a term of one to five years.

Defendants contend that the State failed to prove the essential elements of the crime.[1]

EVIDENCE

Testimony of R. T. Wells, complaining witness:

He is a taxi driver for the Checker Taxi Company. He has been driving a taxi for 18 years and has been employed by Checker for about three years.

At about 1:20 a. m. on January 30, 1967, he was driving a taxi south on Woodlawn and picked up the defendants at about 47th and Woodlawn. He was instructed to take them to 55th and Prairie. As they proceeded to that point they passed another taxi driver in his private car, and the witness blew his horn and waved. Turner asked if he knew the other driver and said, "That fellow is pretty fast with a knife."

They proceeded west on 47th and then turned south on Drexel. As they approached 49th Street Horne suggested that he pull over. Horne said, "This is good enough." The witness said, "49th Street, you say?" and Horne said, "Yes, this is it." The witness looked over, turned on his top light and stopped. After he turned on the top light, Horne said, "This is it."

The witness looked back and saw that Horne had his left hand on a gun which was partially in his left front pocket. He saw the handle and the nickel plate. He stopped the taxi in the middle of the intersection and

---

[1] Attempt is defined in the Criminal Code, Ill Rev Stats, 1967, c 38, § 8–4:

§ 8–4. Attempt

A person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense.

Robbery is defined in section 18–1 of that code:

§ 18–1. Robbery

A person commits robbery when he takes property from the person or presence of another by the use of force or by threatening the imminent use of force.

134

leaped from it. From outside of the taxi he saw the front part of the gun go up; it was small, a .32 or a .38. He ran north on Drexel some 40 or 50 feet. He then turned around and saw Turner getting over the seat and under the wheel. The taxi then moved off.

He stopped another taxi going south on Drexel and told the driver that a couple of guys had tried to rob him. He then saw a police car going south, so he jumped out of the cab and stopped the police car. The police car started after his taxi on Drexel.

When he next saw the cab it was stopped in front of 4930 South Drexel. As the squad car approached the taxi the defendants jumped out and ran. The police officers chased the defendants and caught them lying in a snowbank.

He has been robbed about seven or eight times in the 18 years that he has driven a taxi; in each instance the robbers had been drinking. He did not smell the defendants' breath but they had had a few drinks.

Testimony of Consie Anderson, called by the State:

He is a police officer for the City of Chicago. On the morning of January 30, 1967, he was in a patrol car with Officers Jessie Cox and Walter Brown. As their car was proceeding southbound on Drexel, R. T. Wells approached the car and explained that two men had attempted to rob him. They went in pursuit of Wells' taxi. They found the cab moving along Drexel; and as they approached, the cab stopped and two men emerged. The two men crossed Drexel and ran into a yard. The officers pursued and he found defendant Horne lying in knee-deep snow. His partners returned with defendant Turner.

Testimony of Officer Jessie Cox, called by the State:

He was in the patrol car with officers Anderson and Brown on the morning in question. He found defendant Turner hiding in some hedges. There were no weapons recovered. Otherwise his testimony is substantially the same as that of Officer Anderson.

135

Testimony of Wendell Ray Horne, a defendant:

In the early morning of January 30, 1967, he was in the company of defendant Turner celebrating Turner's birthday. They left a tavern with the intention of going to defendant Turner's girl friend's house located on 60th Street. They hailed a taxi and Turner directed it to 55th Street in order to buy some liquor before going on to his girl friend's. The cab proceeded along until it ended up going south on Drexel.

When the cab got to the 4800 block he told defendant Turner, "Melvin, I'm not going to go with you." He then told the taxi driver, "When you get to the corner you can let me out." The driver did not say anything. When they got to 49th the witness said, "Hold on man, this is it right here." At that time the driver slowed the taxi down and then he was gone; the taxi was still moving when he left it. Defendant Turner climbed over the front seat to stop the cab which was still rolling; and he stopped the cab in front of a nursing home at 4938 Drexel Avenue. The driver had run off towards 47th Street.

He had worked at the nursing home and he knew the owner and the nurses and most of the patients. He decided to stop there and visit the graveyard shift. That's why he wanted to get out at 49th. Defendant Turner was going on to visit his girl friend.

They had been drinking a lot because they had been celebrating. He did not have a .38 or a .32 revolver in his possession. When the driver jumped from the taxi he said, "You are not going to get my $25.00."

He got out of the taxi after defendant Turner stopped it and he proceeded into the yard in front of the nursing home. The snow was deep and he fell into it. Just as he fell in the snow the police came over and he heard them hollering, "Where's the other one, where's the other one?" So he said, "Here I am, over here." Officer Anderson came over then and took him and defendant Turner to the police station. They were searched, and no gun was found.

136

He did not use the driveway entrance to the nursing home because it was too far away; so he stepped over the hedge and walked through the snow. He did not run from the cab.

Defendant Melvin Turner did not testify.

OPINION

Defendants contend that the evidence does not show that a substantial step was taken toward the commission of a crime nor that force was used or threatened. They claim that the taxi driver was so fearful of a robbery attempt that he misinterpreted defendant Horne's statement, "This is good enough, this is it"; and although there is no evidence to support it, defendants now urge that the driver mistook Horne's wallet for a small pistol. Defendants point out that no gun was ever found, and that they have a reasonable explanation for their actions.

The accounts of what occurred that early morning are very similar. The only real conflicts concern the existence of a gun, defendant Horne's intent when he told the driver to pull over, the movement of the taxi when the driver jumped from it, and the defendants' flight from the taxi when the police approached.

■■ When a cause is tried without a jury, it is the function of the trial court to determine the credibility of the witnesses and the weight to be afforded their testimony, and where the evidence is merely conflicting a reviewing court will not substitute its judgment for that of the trier of fact. People v. Clark, 30 Ill2d 216, 219, 195 NE2d 631. The trial court evidently believed that the taxi driver, after being requested to stop at a place other than the announced destination, heard Horne say: "This is it," and saw Horne put his hand on a pistol which he then saw go up. We believe these actions constituted a substantial step towards the commission of a robbery and also a threat of the imminent use of force.

■■ Defendants next contend that the State did not prove the specific intent to rob. They argue that the

words, "This is good enough, this is it" cannot be interpreted as threatening a holdup; those words, they insist, only indicate that the defendants wanted the driver to stop the taxi and let them off. They point out that there was no demand for money, nor was there an attempt to take any property. Proof of specific intent to rob is necessary, but competent circumstantial evidence may establish the requisite intent. People v. Hawkins, 54 Ill App2d 212, 216, 203 NE2d 761; People v. Bonner, 43 Ill App2d 42, 47, 192 NE2d 568. Even if the sudden request to stop the taxi together with Horne's statement, "This is it," were made in the most innocent manner, the production of a gun by defendant Horne is sufficient circumstantial evidence of an intent to commit a crime.

Defendants then argue that even if the gun shows an intent to commit a crime, the State has not proven that there was an intent to rob. However, the Illinois Supreme Court, in People v. Kuhn, 291 Ill 154, 125 NE 882, said at page 158:

> The method employed and the order given were those usually employed and given in an assault with intent to rob, and the fact that there was no robbery was evidently due to the failure of (the complaining witness) to obey the order. The fact that he defended himself and prevented the robbery has no tendency to disprove the alleged intent.

That language is directly applicable to the instant case.

After examining the entire record we believe that the defendants were proven guilty beyond a reasonable doubt. The judgment of the Circuit Court is affirmed.

Affirmed.

ENGLISH and McNAMARA, JJ., concur.