In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-4182

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SUSAN M. VUCKO,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 CR 261—**Ronald A. Guzmán**, *Judge.*

ARGUED JUNE 7, 2006—DECIDED JANUARY 12, 2007

Before BAUER, RIPPLE, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* For many years, Susan Vucko
was employed by the Northwest Building Materials and
Supply Company, where she both worked at the retail
sales counter and performed various bookkeeping tasks. In
the mid-1990s Vucko began to help herself to Northwest's
money, eventually pilfering more than $700,000. Mean-
while, Vucko also defrauded the United States by falsely
reporting her income on her tax returns for five years.
After she was caught, she pleaded guilty without a plea
agreement to wire fraud in violation of 18 U.S.C. § 1343
and to making a false statement in a tax return in viola-
tion of 26 U.S.C. § 7206(1). The court imposed concur-
rent sentences of two years' imprisonment for each offense

and three years of supervised release and ordered restitution in the amount of $720,662. Vucko now appeals from her sentence, claiming that the district court erred by failing to group the charges under § 3D1.2(c) or (d) of the U.S. Sentencing Guidelines. Although her argument might have some force if one were to view those provisions of the Guidelines in isolation, we conclude that the district court properly found that grouping was inappropriate. We therefore affirm the sentence.

**I**

There is little that we need to add to the facts underlying Vucko's convictions. At Northwest, Vucko was responsible for reconciling credit card sales with merchant banks that processed credit transactions for the company. In addition, as part of her duties at the retail counter, she processed cash and credit card transactions. In 1992 or 1993, Northwest gave her the additional job of closing out the retail sales counter at the end of each business day. This involved balancing the cash drawer, ensuring that the cash register and credit card swipe machine were properly closed, and recording gross sales. Vucko also had to prepare weekly and monthly reports totaling all retail sales.

Beginning around February 1995, Vucko succumbed to the temptation to help herself to some of the money she was handling. She started to use Northwest's credit card swipe machine to process unauthorized credits or refunds for banking and credit card accounts belonging to her or to members of her family. Normally she did this at the end of the business day, before closing out the cash register and credit card machine. These "refunds" were typically between $2,000 and $9,000. Because no one was around to supervise Vucko's work at closing time, she was able to conceal her actions when she "zeroed

out" the two machines after processing her fraudulent transactions. From 1995 to 1999, when she was caught, she accumulated at least $720,662 in unauthorized credits, which she distributed among five accounts held either in her name or the name of her husband or one of her sons.

Vucko took a number of steps to keep Northwest from discovering her scheme. First, she destroyed the tapes from the cash register and credit card machines at the end of each business day. Second, she falsified various sales reports by under-reporting the amount of actual credit card purchases at Northwest. Third, she destroyed the monthly statements that Northwest received from its merchant banks.

At the same time, Vucko was concealing the true amount of her annual income on the federal tax returns she prepared for herself and her husband each year from 1995 through 1999. She under-reported her gross income by at least $111,802 in 1995; by $129,298 in 1996; by $272,162 in 1997; by $156,601 in 1998; and by $31,017 in 1999. In the aggregate, the underreported income was almost $701,000, just short of the amount Vucko embezzled. She filed her final fraudulent return, covering tax year 1999, in April 2000, nearly a year after her thefts had been discovered.

## II

At sentencing, the primary issue that Vucko raised was whether her wire fraud and tax fraud counts had to be grouped under the provisions of § 3D1.2(c) or (d). Vucko argued before the district court that the wire fraud guideline, then § 2F1.1, relied on the same offense characteristic as the tax fraud guideline, § 2T4.1—namely, the amount of loss. She also argued that the two charges essentially reflected the loss of the same money, even

though the victims were different. The district court rejected this position, with the following explanation:

> I'm satisfied that this is not double counting in any meaningful sense. I think we have two separate and distinct acts, either one of which could have been done without the other. Tax evasion can be done without fraud and fraud can be done without tax evasion. It takes a specific independent thought process to do each. They're different in kind and they're different in time and they're different in execution, so I'll deny the objection to and the request to modify on that basis.

After hearing argument on the factors identified in 18 U.S.C. § 3553(a), the court imposed its sentence.

### III

On appeal, Vucko continues to urge that the district court should have grouped her two offenses for sentencing purposes. In order to decide whether grouping was required, we first must settle on the applicable guideline for each offense. For this purpose, it is undisputed that the 1998 version of the Guidelines Manual applies. The first offense to which Vucko pleaded guilty was wire fraud. In the 1998 manual, Guideline § 2F1.1 provides the offense level for fraud, starting with a base offense level of six. See § 2F1.1(a). (Amendment 617 to the Guidelines, effective November 1, 2001, deleted § 2F1.1 and moved a great number of economic offenses, including wire fraud, to § 2B1.1; this change has no effect on Vucko's case.) There is a laundry list of specific offense characteristics in the fraud guideline, starting with progressive increases for the amount of monetary loss if that loss is over $2,000. See § 2F1.1(b)(1). Other relevant characteristics include the level of planning, the number of victims, the use of mass

marketing to commit the fraud, a misrepresentation that one was acting on behalf of a charitable or similar organization, the violation of a judicial decree, the relocation of the fraud to another jurisdiction to evade law enforcement, the commission of a substantial part of the fraudulent scheme from outside the United States, the use of sophisticated means, the conscious or reckless risk of serious bodily injury, the possession of a dangerous weapon, and acts that jeopardize the soundness of a financial institution or affect it while deriving more than $1 million in gross receipts from the scheme. See § 2F1.1(b)(2)-(7). This is a lengthy list, but it is noteworthy for two reasons. First, the failure to report income from the fraud to the Internal Revenue Service (IRS) is not a specific offense characteristic under this guideline, though it is foreseeable that in many cases of fraud the perpetrator also will fail to report her income to the federal government on her tax return. Second, each of these offense characteristics is defined both in the text of the guideline and in the Application Notes following the guideline.

The other offense to which Vucko pleaded guilty was her failure to report her ill-gotten gains on her tax returns. Guideline § 2T1.1 applies to a number of tax offenses, including the filing of a false or fraudulent tax return. Section 2T1.1(a) offers two options for computing the base offense level: either the level from § 2T4.1 (the tax table) corresponding to the tax loss, or level 6, if there is no tax loss. Section 2T1.1(b), in contrast to the fraud guideline, identifies only two specific offense characteristics, which are brief enough to set out in full:

(1) If the defendant failed to report or to correctly identify the source of income exceeding $10,000 in any year from criminal activity, increase by **2** levels. If the resulting offense level is less than level **12**, increase to level **12**.

(2) If the offense involved sophisticated concealment, increase by **2** levels.

The first of those is the one that Vucko believes requires grouping of her two offenses.

It is true, as Vucko argues, that the criminal conduct covered by the wire fraud was the same as the conduct that gave her enough illegally derived income to trigger § 2T1.1(b)(1). Before jumping to Vucko's desired conclusion that grouping is required under § 3D1.2(c), however, we must ensure that this was the result the Sentencing Commission intended and that this is the proper way to read the relevant guidelines. The first step in this process is to see what the Commission had to say. The Introductory Commentary to Part T of the Guidelines (Offenses Involving Taxation) reads as follows:

> The criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system. Criminal tax prosecutions serve to punish the violator and promote respect for the tax laws. Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines. Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators.

The commentary also elaborates on the specific offense characteristic in § 2T1.1(b)(1). Application Note 3 defines the term "criminal activity" in § 2T1.1 to mean "any conduct constituting a criminal offense under federal, state, local, or foreign law." The Background Note explains further that:

> [f]ailure to report criminally derived income is included as a factor for deterrence purposes. Criminally

derived income is generally difficult to establish, so that the tax loss in such cases will tend to be substantially understated. An enhancement for offenders who violate the tax laws as part of a pattern of criminal activity from which they derive a substantial portion of their income also serves to implement the mandate of 28 U.S.C. § 994(i)(2).

The latter statute is the one that spells out the duties of the Sentencing Commission. Subpart (i)(2) directs the Commission to "assure that the guidelines specify a sentence to a substantial term of imprisonment for categories of defendants in which the defendant . . . committed the offense as part of a pattern of criminal conduct from which the defendant derived a substantial portion of the defendant's income."

The harms caused by tax offenses and the need for deterrence that the Commission emphasized both inform the proper application of the grouping guideline. Section 3D1.2 provides, in pertinent part:

All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule: . . .

(c) When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.

(d) When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

According to the Introductory Commentary for this part of the Guidelines Manual (entitled "Multiple Counts"), "[t]he rules in this Part seek to provide *incremental* punishment for significant additional criminal conduct." (Emphasis added.) Application Note 5 to § 3D1.2 advises that "when conduct that represents a separate count*, e.g.,* bodily injury or obstruction of justice, is also a specific offense characteristic in or other adjustment to another count, the count represented by that conduct is to be grouped with the count to which it constitutes an aggravating factor." This is to prevent "double counting"— exactly the concern that the district court recognized was implicated. The Application Note also indicates, however, that "this rule applies only if the offenses are closely related." It gives examples of what kind of offenses would satisfy that criterion. For instance, grouping is not proper for a bank robbery committed on one occasion and an assault on a separate occasion, because the harm from the assault is not a specific offense characteristic under the bank robbery guideline and represents a different harm. In contrast, the use of a firearm in a bank robbery and unlawful possession of that firearm should be grouped. See § 2B3.1(b)(2) (possession of a firearm is a specific offense characteristic for robbery). Obstruction of justice, which is handled as a separate adjustment under § 3C1.1 and thus is not technically a "specific offense characteristic," nevertheless is covered by § 3D1.2(c) for grouping purposes.

The Background Note acknowledges that this is a difficult area. It states, however, that offenses involving different victims (or societal harms) "are grouped together only as provided in subsection (c) or (d)." Conceding that it is not always "clear cut" whether or not to group, the Note concludes with an appeal to broad principles: "In interpreting this Part and resolving ambiguities, the

court should look to the underlying policy of this Part as stated in the Introductory Commentary."

Vucko is not the first person who initially committed fraud and then failed to report her income from that fraud. We are therefore not the first court to face the question whether these offenses should be grouped under § 3D1.2(c). The issue is difficult enough that it has caused a split among our sister circuits.

The Fifth Circuit encountered this problem in *United States v. Haltom*, 113 F.3d 43 (5th Cir. 1997). Haltom pleaded guilty to one count of mail fraud and four counts of tax evasion. The district court found that grouping was inappropriate, but the court of appeals reversed. Noting that the Introductory Commentary explained that grouping provides for "incremental punishment for significant additional criminal conduct," the court thought that the key word there was "significant." "Sometimes," it commented, "an additional count does not represent significant additional criminal conduct, and does not lead to an increased sentence." *Id.* at 45. Turning specifically to § 3D1.2(c), the court reasoned, "Convictions on multiple counts do not result in a sentence enhancement unless they represent additional conduct *that is not otherwise accounted for by the guidelines.*" *Id.* at 45-46 (emphasis in original). The defendant's offense level under the tax guideline was increased by two, because the source of the unreported income was criminal activity. The court described as "indisputable" the fact that the mail fraud count covered conduct that was being treated as a specific offense characteristic for the tax count. *Id.* at 46. Immediately after so concluding, however, the court went on to concede:

> As a matter of common parlance, Haltom's mail fraud and tax evasion convictions cannot readily be said to have caused "substantially the same harm." See

> U.S.S.G. § 3D1.2. The mail fraud damaged the private financial interests of Haltom's corporate clients; the tax offenses harmed the government. Absent a contrary directive in the guidelines themselves, we might have considered these harms quite distinct and concluded that Haltom's offenses were not groupable.

113 F.3d at 46. It nonetheless thought that grouping was compelled by the guidelines.

The First Circuit took a different approach in *United States v. Martin*, 363 F.3d 25 (1st Cir. 2004). There the defendant also pleaded guilty to fraud and tax evasion, and the district court decided that grouping was required. It computed an offense level of 20 for the fraud counts and 18 for the tax evasion counts, the latter including the two extra points for income derived from criminal activity that exceeds $10,000. Following an analysis similar to that in *Haltom,* it grouped based on § 3D1.2(c). Reversing, the First Circuit noted that the Guidelines "do not require that all of the conduct be 'fully accounted for'; rather, it is enough that conduct 'embodied' in the second offense is 'treated as an adjustment' to the other offense." *Id.* at 41 (quoting *United States v. Sedoma*, 332 F.3d 20, 27 (1st Cir. 2003) (internal quotation marks omitted) (quoting U.S.S.G. § 3D1.2(c))). As a practical matter, the decision to group the tax and fraud offenses meant that the final offense level was two notches lower than it would have been without grouping, just as in Vucko's case. The First Circuit acknowledged that "[t]he text of § 3D1.2(c), taken alone, appears to support grouping in this case." *Martin*, 363 F.3d at 42. Nevertheless, the court pointed out, the Guidelines must be interpreted in light of the Commentary, which is "authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Id.* (quoting *Stinson v. United States*, 508 U.S. 36, 38 (1993)). Thus, "even when one count embodies

conduct treated as an adjustment to a second count, the counts cannot be properly grouped under § 3D1.2(c) unless they are 'closely related.'" *Martin*, 363 F.3d at 42. The First Circuit held that the fraud and tax evasion counts are not "closely related" because they involve "different victims," cause "different harms," and required "different conduct." *Id.* at 42-43.

The court observed that if the two offenses were grouped, "there would be no punishment consequences for the tax evasion conduct." *Id.* at 43. This was because the offense level for the fraud was 20, and that for the tax evasion was 18; with grouping, "the offense level for the group is set, pursuant to § 3D1.3, at the highest AOL [adjusted offense level] of the offenses in the group." *Id.* at 41. In contrast, if the two counts were not grouped, then § 3D1.4 would require the addition of two more levels for the two counts. (This is because each count would be its own group, and the Guidelines instruct that the group with the highest offense level counts as one "unit"; an additional unit is added for each group that is either equally serious or from one to four levels less serious. See § 3D1.4(a). If there are two units, as here, an additional two levels must be added to the offense level.) Only by refusing to group, the court said, could it achieve an "outcome [that] is consistent with an important but simple proposition: one who receives stolen money and fails to report that income in a tax return is generally more culpable than one who merely receives stolen money." *Id.* at 43. Thus, the court concluded, the decision not to group comports both with the underlying purpose of § 2T1.1(b)(1), which increases the offense level for failing to report criminal proceeds in part because the tax losses tend to be understated, and with 28 U.S.C. § 994(i)(2), which is the statutory mandate "to punish with a term of imprisonment those defendants who derive a substantial part of their income from criminal activity." 363 F.3d at 44.

The Third and Tenth Circuits take the same approach as the First. In *United States v. Astorri*, 923 F.2d 1052 (3d Cir. 1991), the Third Circuit held under an earlier version of the Guidelines that neither specific offense characteristic applicable to tax offenses (failing to report income exceeding $10,000 per year from criminal activity or concealing criminal activity from which the defendant derived a substantial portion of the income) "constitute[d] conduct embodied in the fraud count." *Id.* at 1056. It thus concluded that grouping under § 3D1.2(c) was inappropriate. Similarly, in *United States v. Peterson*, 312 F.3d 1300, 1302-04 (10th Cir. 2002), the Tenth Circuit found that the offenses were not closely related and "the specific offense characteristic for failure to report criminally-derived income is not sufficiently based here on conduct embodied in the mail fraud count as to warrant grouping." See also *Weinberger v. United States*, 268 F.3d 346, 353-54 (6th Cir. 2001) (rejecting grouping under § 3D1.2(c) because the harms were not closely related and finding it did not need to reach the double counting issue because the offense level would be the same "regardless of whether the court applied the two-level statutory enhancement under U.S.S.G. § 2T1.1(b)(1)"); *United States v. Vitale*, 159 F.3d 810, 813-15 (3d Cir. 1998) (reaffirming *Astorri* and rejecting *Haltom*, leaving open a little wiggle room for situations in which the adjustment by the tax evasion enhancement actually alters the final offense level).

**IV**

Several reasons persuade us to reject grouping in these circumstances. First, looking at § 3D1.2(c), we agree with the First and Tenth Circuits that the "specific offense characteristic" in the tax guideline is too broad to require the conclusion that it encompasses wire fraud in

particular. Wire fraud is just one of countless ways to obtain income from criminal activity. To suggest that any criminal offense that produces income is subsumed into the tax guideline calculation with a two-level enhancement is to create a category without limits. This is different from possessing a gun during a bank offense, where precisely that conduct is identified as a specific offense characteristic, or obstruction of justice, which is a specific adjustment under § 3C1.1. There is a distinction between saying that any underlying criminal act increases the offense level and that a specific underlying act increases the offense level. Furthermore, the Commentary indicates that the enhancement is not supposed to account for the underlying crime, but rather for the presumption that officials will not be able to calculate the full extent of the ill-gotten gains that a defendant failed to report. Indeed, in this case, as we noted earlier, Vucko went to great lengths to cover up her fraud and thus disguise the amount of her illegal income. The purpose of the enhancement suggests that it does not and was not intended to add additional punishment to take the wire fraud into account, but rather that it was intended to recognize that Vucko may have underreported more income than the IRS detected.

Second, even if the wire fraud were encompassed by the tax enhancement, the crimes still must be "closely related" to be grouped under § 3D1.2(c) according to the commentary. These two counts fail that basic test. Vucko committed two different crimes, causing two different harms and harming two different victims. She did so at different times through different actions. This is enough to dispose of her argument that grouping was required under § 3D1.2(d). As we observed in *United States v. Brisson*, in which the defendant also was convicted of fraud and tax offenses but made a grouping argument under § 3D1.2(d) rather than (c):

> There was no necessary connection between Brisson's fraud on his bank and his bilking of the government. Brisson argues his three counts should go together because they were all "economic offenses arising out of the failed ownership of the hotel." But that is both too high a level of generality and a disingenuous spin on the facts. Brisson's false tax claims were filed after he lost the hotel and was desperate for money. But his diversion of the hotel's room receipts in violation of his bank's security agreement helped bring about the failure of his ownership; it did not "aris[e] out of" that failure. Moreover, Brisson's conduct involved different victims . . . . In short, the bank fraud and tax fraud did not represent "substantially the same harm," U.S.S.G. § 3D1.2, so [the district judge] did not err in refusing to group them.

448 F.3d 989, 992 (7th Cir. 2006) (emphasis omitted). The fact that Vucko's crimes are generally related, in that her initial wire fraud scheme produced the funds she failed to report, is insufficient to make the crimes "closely related."

Although Vucko argues that *United States v. Wilson,* 98 F.3d 281 (7th Cir. 1996), compels a ruling in her favor, we find that case distinguishable. There we found that certain fraud and money laundering charges were closely related and subject to grouping under § 3D1.2(d), because "[w]ithout the fraud there would have been no funds to launder." *Id.* at 282-83 (quoting *United States v. Mullens*, 65 F.3d 1560, 1564 (11th Cir. 1995)). Wilson's money laundering provided the mechanism for perpetuating his Ponzi scheme, and both of his crimes targeted the same set of victims. Vucko's crimes, in contrast, separately targeted Northwest and the United States. Vucko also urges that grouping is consistent with two cases from the Second Circuit, *United States v. Petrillo,* 237 F.3d 119 (2d Cir. 2000), and *United States v. Fitzgerald,* 232 F.3d

315 (2d Cir. 2000), both of which hold that tax and fraud offenses that are part of a common criminal scheme should be grouped under § 3D1.2(d). As we have already noted, however, the scheme must be something more than a plan to become rich. There is no evidence of such a common scheme in Vucko's case. To the extent that the Second Circuit cases might be read to support a broader rule covering all fraud and tax offenses, we note only that we have already found in *Brisson, United States v. Chavin,* 316 F.3d 666, 673-76 (7th Cir. 2002), and *United States v. Johnson,* 117 F.3d 1010, 1014 (7th Cir. 1997), that mail or wire fraud and tax evasion normally involve different harms and thus should not be grouped under § 3D1.2(d). We see no reason to revisit those holdings.

Although double counting certainly should be avoided, there is no risk of it here. According to the Pre-Sentence Report, the adjusted offense level for Vucko's fraud was 18. The adjusted offense level for her tax offense was also 18, including the two-level increase called for by § 2T1.1(b)(1) for the income she derived from her wire fraud. Because her offenses were not grouped, she earned one unit for each offense. See § 3D1.4. With two "units," her overall offense level was increased by two, bringing it up to 20. *Id.* Had she not been given the two extra levels provided by § 2T1.1(b), her tax offense level would have been 16. Under § 3D1.4, Vucko still would have received one unit for the fraud and one unit for the tax offense, because the tax offense level (16) would have been just two levels less serious than the fraud level (18). The extra two levels required because she had two units would have been added to the higher offense level, § 3D1.4, and thus she would have wound up with an adjusted level of 20. In other words, Vucko's final offense level was the same with or without the extra two levels attributable to § 2T1.1(b).

This, in fact, suggests a possible solution to the hypothetical problem Vucko's case suggests, even apart from the sentencing flexibility inherent in the system of advisory guidelines. In cases where a defendant faces separate counts for the criminal activity that produced the unreported income and for the tax crime, and double-counting is possible (unlike Vucko's case), the court can simply refrain from adding the § 2T1.1(b)(1) two-level enhancement to the tax offense. *Cf. United States v. White,* 222 F.3d 363, 373-76 (7th Cir. 2000) (holding that a court may not both convict under 18 U.S.C. § 924(c) for use of weapon and impose the guidelines enhancement under U.S.S.G. § 2B3.1(b)(2) for use of the same weapon in the same crime). This approach is preferable to a refusal to group. Without grouping, where the tax offense is minor enough to lead to an offense level more than four less than the principal offense, the defendant would earn only one-half unit, or in the extreme case no extra units at all. See § 3D1.4(b) (one-half unit for groups 5 to 8 levels less serious than the group with the highest offense level); § 3D1.4(c) (disregard groups that are 9 levels less serious than the one with the highest score). In this way, the Guidelines produce a final offense level that reflects the seriousness of the underlying conduct.

We note, moreover, that even where both the tax-specific offense characteristic and grouping affect the final sentence, the Tenth Circuit suggested in *Peterson* there is still no problem with double counting. As it saw matters, there is no double counting because "the specific offense characteristic for the tax evasion count relates to the defendant's subsequent decision and conduct regarding the tax treatment of those monies he embezzled from the companies, and this conduct is not embodied within the defendant's use of the mail to conceal the embezzlement." 312 F.3d at 1304 (adopting the district court's reasoning).

Grouping under the circumstances of Vucko's case would seriously undercut the concept of "incremental punishment" that underlies both the grouping rules and the Guidelines as a whole. The effect of grouping Vucko's offenses would be to eliminate the marginal punishment for her second offense, because she would have only one group with an offense level of 18 (the level of each one of her offenses). There would thus be no increase at all for her additional crime (again, apart from any adjustment the district court might make after calculating the advisory guideline range).

## V

We conclude that the district court came to the correct result when it rejected grouping. Vucko's two offenses were not closely enough related to justify grouping under § 3D1.2(d), nor does one contribute a specific offense characteristic to the other such that § 3D1.2(c) should apply. We therefore AFFIRM the judgment of the district court.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—1-12-07