In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 22-1477

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHARLES STATES,

*Defendant-Appellant.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 02-cr-464-6 — **Ronald A. Guzmán**, *Judge.*

---

ARGUED APRIL 6, 2023 — DECIDED JULY 5, 2023

---

Before FLAUM, ST. EVE, and PRYOR, *Circuit Judges.*

ST. EVE, *Circuit Judge.* During the summer of 2001, Charles States belonged to a drug trafficking organization known as the Carman Brothers Crew. He participated in four kidnappings, during which he beat and threatened his victims to extort information, drugs, money, and other property for the Crew's benefit. When FBI agents and Chicago police officers went to States's apartment in 2002 to arrest him, States opened fire and hit one police officer in the finger.

States was charged with racketeering, attempted murder, kidnapping, drug possession, and firearms offenses. A jury convicted him on all counts, and he was sentenced to life plus 57 years in prison. After spending more than 15 years challenging his convictions and sentence, the district court resentenced him in 2022 to 30 years. States now appeals the validity of one of his firearms convictions and argues that the district court erred by refusing to group certain counts for sentencing purposes. We affirm his conviction and sentence.

## I. Background

### A. Offense Conduct

The Carman Brothers Crew, named for Richard and Jerome Carman, operated in the Chicago area from 1994 until August 2001. States was a member in July and August 2001. The Crew's crimes included drug trafficking, kidnapping, extortion, robbery, theft, and firearms offenses. States participated in some drug trafficking activities, such as cooking cocaine into cocaine base, but he principally committed kidnapping and extortion on behalf of the Crew.

In July 2001, States and Jerome Carman kidnapped a man named Ramon at gunpoint. Over the course of two days, States and Jerome physically restrained, threatened, and beat Ramon, coercing him into handing over 5.5 kilograms of cocaine and three firearms. States received 1 kilogram of cocaine as payment. On August 1, 2001, States helped kidnap three more individuals. He threatened two victims at gunpoint to extract information about the third victim, who had stolen from the Crew. States shot the third victim's dog and stole a Rolex and Lexus from him. States received the Rolex as payment.

On October 9, 2002, FBI agents and Chicago police officers went to States's apartment to execute a warrant for his arrest. States fired five shots through the door and hit a police officer in the finger, causing an injury that required surgery. Law enforcement then arrested States.

**B. Procedural History**

States was indicted on 12 counts, and in 2005 a jury convicted him on all counts. The district court sentenced him to life in prison, plus 57 years in consecutive sentences for three violations of 18 U.S.C. § 924(c)—two for carrying a firearm during and in relation to a crime of violence, and one for carrying a firearm during and in relation to a drug trafficking crime. On appeal, States argued only that the entire federal criminal code was unconstitutional. We rejected that argument and affirmed his convictions. *United States v. States*, 242 F. App'x 362 (7th Cir. 2007) (per curiam). States subsequently moved to vacate his sentence pursuant to 28 U.S.C. § 2255 because he had received ineffective assistance of counsel on appeal. The district court vacated States's sentence, then reimposed it to allow States to appeal a second time. We affirmed again. *United States v. States*, 652 F.3d 734 (7th Cir. 2011).

In 2015, the Supreme Court held that the residual clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B), was unconstitutionally vague. *Johnson v. United States*, 576 U.S. 591 (2015). Because § 924(c) has an analogous residual clause (which was later struck down for the same reason in *United States v. Davis*, 139 S. Ct. 2319 (2019)), in 2016, States sought our permission to file a successive § 2255 motion to vacate his three § 924(c) convictions. *See* 28 U.S.C. § 2255(h). We granted him permission to challenge his two § 924(c) convictions for

carrying a firearm during and in relation to a crime of violence.[1]

States's predicate crimes of violence were Hobbs Act extortion, 18 U.S.C. § 1951, and attempted murder of a federal officer, 18 U.S.C. §§ 1113–1114. The government did not contest States's motion with respect to the § 924(c) conviction predicated on extortion, and the district court vacated that conviction. The district court denied States's motion with respect to the conviction predicated on attempted murder because then-controlling circuit precedent established that an attempt to commit a crime of violence is itself a crime of violence under the elements clause of § 924(c).

Because the district court had vacated one of States's convictions, it resentenced him in full. The updated Presentence Investigation Report ("PSR") grouped States's convictions as follows:

- Count Group 1 encompassed the drug-related offenses—racketeering, racketeering conspiracy, conspiracy to possess cocaine with intent to distribute, and possession of cocaine with intent to distribute;
- Count Group 2 comprised the convictions related to Ramon's kidnapping—racketeering (based on different racketeering acts than in Count Group 1), racketeering conspiracy, and extortion;
- Count Groups 3–5 related to the other three kidnappings; and

---

[1] We denied permission to challenge the third § 924(c) conviction because *Johnson* did not call into question the validity of § 924(c) convictions predicated on drug trafficking crimes. *See* § 924(c)(2).

- Count Group 6 comprised the offenses States committed during his October 2002 arrest.

The PSR did not group States's two remaining § 924(c) convictions—one each for using a firearm during and in relation to a crime of violence and a drug trafficking crime—because they mandated consecutive sentences.

At sentencing in February 2022, States objected to the PSR's failure to group Count Groups 1 and 2. He argued that they "involv[ed] substantially the same harm" because each count group "embodie[d] conduct that [was] treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts." U.S.S.G. § 3D1.2(c).[2] The district court disagreed, finding that these offenses were "different occurrence[s] in every way, including the dangers to the community and the danger to a single individual," so it would be "incongruous to group them together." The court imposed concurrent sentences on Count Groups 1–6, the longest of which was 20 years, plus two consecutive five-year sentences for the § 924(c) convictions.

States appealed. He argues, first, that the § 924(c) conviction predicated on his attempted murder conviction is invalid and, second, that the district court erred at sentencing by refusing to group Count Groups 1 and 2.

## II. Motion to Vacate

States appeals the denial of his motion to vacate his conviction for carrying a firearm during and in relation to a federal crime of violence. 18 U.S.C. § 924(c)(1)(A). The predicate

---

[2] The 2001 version of the Guidelines applied to States, but the relevant provisions are materially identical to those currently in force.

crime of violence for this conviction is attempted murder of a federal officer. 18 U.S.C. §§ 1113–1114. We review de novo whether a predicate offense is a crime of violence. *Haynes v. United States*, 936 F.3d 683, 687 (7th Cir. 2019).

**A. Analytical Framework**

The elements clause of § 924(c) defines "crime of violence" as "an offense that is a felony and … has as an element the use, attempted use, or threatened use of physical force against the person or property of another." § 924(c)(3)(A). We employ the categorical approach to determine whether an offense meets this definition. *United States v. Taylor*, 142 S. Ct. 2015, 2020 (2022). Under the categorical approach, "[t]he only relevant question is whether the federal felony at issue always requires the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force." *Id.* If "there is some way to commit a[n offense] without using, attempting to use, or threatening physical force," then it is not a crime of violence. *United States v. Worthen*, 60 F.4th 1066, 1068 (7th Cir. 2023).

We apply the modified categorical approach when a predicate offense appears in a "divisible" statute. *Gamboa v. Daniels*, 26 F.4th 410, 416 (7th Cir. 2022) (citing *Chazen v. Marske*, 938 F.3d 851, 857 (7th Cir. 2019)). A divisible statute "sets out one or more elements of the offense in the alternative." *Id.* (quoting *Descamps v. United States*, 570 U.S. 254, 257 (2013)). The modified categorical approach requires us to "'determine what crime, with what elements' [the] defendant was really 'convicted of'" within the divisible statute, before deciding whether it is a valid § 924(c) predicate under the categorical approach. *Haynes*, 936 F.3d at 687 (citations omitted) (quoting *Mathis v. United States*, 579 U.S. 500, 505–06 (2016)).

The statutes at issue here—18 U.S.C. §§ 1113–1114—are divisible because they set out distinct crimes with different elements and penalties. *See Gamboa*, 26 F.4th at 416. No one disputes that States's specific crime of conviction is attempted murder of a federal officer, which is the "attempt[] to kill any officer … of the United States … while such officer … is engaged in or on account of the performance of official duties." § 1114(a). The point of disagreement is whether a § 1114 attempted murder conviction always requires the government to prove that the defendant used, attempted, or threatened physical force. This issue turns on how the categorical approach treats attempt offenses.

## B. *United States v. Taylor*

The Supreme Court analyzed how to apply the categorical approach to attempt offenses in *United States v. Taylor*, where it considered whether attempted Hobbs Act robbery is a crime of violence. 142 S. Ct. at 2018. Hobbs Act robbery is the "unlawful taking or obtaining of personal property from the person … of another, against his will, by means of actual or threatened force." 18 U.S.C. § 1951(b)(1). Completed Hobbs Act robbery is a crime of violence because "actual or threatened force" is an element, as the Court suggested in *Taylor*, 142 S. Ct. at 2020, and we reaffirmed in *Worthen*, 60 F.4th at 1067. But because an attempt to commit Hobbs Act robbery does not always require the government to prove "the use, attempted use, or threatened use of physical force against the person or property of another," § 924(c)(3)(A), the Court held that it is not a crime of violence. *Taylor*, 142 S. Ct. at 2020–21.

*Taylor*'s categorical approach analysis centered on the elements of completed Hobbs Act robbery and the elements of attempt. After reviewing the elements of Hobbs Act robbery,

the Court reasoned "that to win a case for *attempted* Hobbs Act robbery the government must prove two things: (1) The defendant intended to unlawfully take or obtain personal property by means of actual or threatened force, and (2) he completed a 'substantial step' toward that end." *Id.* at 2020 (citation omitted). The categorical approach asks if an offense "always requires the government to prove … the use, attempted use, or threatened use of force," but a person can commit attempted Hobbs Act robbery by attempting to threaten force. *Id.* at 2020–21. Because an attempt to threaten force does not constitute "the use, attempted use, or threatened use of physical force," an attempt to commit the elements of Hobbs Act robbery, § 1951(b)(1), does not contain an element of force that matches § 924(c)(3)(A)'s elements clause.

*Taylor*'s analysis did not end there. Although the elements of attempted Hobbs Act robbery do not match § 924(c)(3)(A), the Court had not yet addressed the distinct elements of attempt. Those elements are (1) the intent to commit the substantive offense and (2) a substantial step toward committing that offense. *Taylor*, 142 S. Ct. at 2020.[3] If proving a defendant committed those elements always required the government to prove the use, attempted use, or threatened use of force, then attempted Hobbs Act robbery would be a crime of violence under § 924(c)(3)(A). But the Court held that the elements of attempted Hobbs Act robbery do not categorically include

---

[3] As explained below, the elements of attempted murder of a federal officer *are* a categorical match for § 924(c)(3)(A). While *Taylor* conducted a separate analysis of the elements of attempt to decide whether attempted Hobbs Act robbery is a crime of violence, it is unnecessary to consider the elements of attempt to conclude that attempted murder of a federal officer is a crime of violence.

such force: "[A]n intention is just that, no more. And whatever a substantial step requires, it does not require the government to prove that the defendant used, attempted to use, or even threatened to use force against another person or his property." *Taylor*, 142 S. Ct. at 2020–21.

The Court used a hypothetical to illustrate why attempted Hobbs Act robbery does not satisfy the elements clause. A would-be Hobbs Act robber named Adam cases a store, purchases supplies, plans his getaway, and writes a note reading "Your money or your life" to pass to the cashier. *Id.* at 2021. "The note is a bluff, but Adam hopes its implication that he is armed and dangerous will elicit a compliant response." *Id.* Adam is arrested as he crosses the threshold of the store and never conveys his threat to the cashier. *Id.* On this fact pattern, Adam has committed attempted Hobbs Act robbery even though he did not use, attempt, or threaten force; "[h]e may have intended and attempted to [threaten force], but he failed." *Id.* Thus, the Court concluded, "no element of attempted Hobbs Act robbery requires proof that the defendant used, attempted to use, or threatened to use force." *Id.*

**C. The Scope of *Taylor***

The parties dispute how broadly *Taylor* applies. The government contends that *Taylor*'s holding that an attempt is not a crime of violence is limited to attempts to commit offenses—like Hobbs Act robbery—that can be completed without the use of actual force. Under this interpretation, adopted by the two other circuits to have considered the issue, *Taylor* leaves open the possibility that an attempt to commit an offense that requires the use of force may be a crime of violence. *See Alvarado-Linares v. United States*, 44 F.4th 1334, 1346–47 (11th Cir. 2022); *United States v. Martin*, No. 22-5278, 2023 WL 2755656,

at *5–7 (6th Cir. Apr. 3, 2023), *cert. docketed*, No. 22-7760 (U.S. June 12, 2023).

States, in contrast, argues that *Taylor* applies to all attempt offenses and establishes that attempt crimes are never crimes of violence. He reads *Taylor* to contain no language limiting its reach to offenses that can be committed without the use of actual force. States insists that when the Court observed that "[w]hatever one might say about *completed* Hobbs Act robbery, *attempted* Hobbs Act robbery does not satisfy the elements clause," *Taylor*, 142 S. Ct. at 2020, it meant that the identity of the completed offense is irrelevant because no attempt crime is a crime of violence.[4]

We agree with the government and our sister circuits. *Taylor* is silent about attempts to commit crimes that require the use of force, and the sounder reading of "[w]hatever one might say about *completed* Hobbs Act robbery" is that the Court was declining to reach a question unnecessary to its decision. *See, e.g.*, *MOAC Mall Holdings LLC v. Transform Holdco LLC*, 143 S. Ct. 927, 940 n.10 (2023). Further, States's reading of *Taylor*—that no attempt offense is a crime of violence— would effectively strike "attempted use … of physical force" from § 924(c)(3)(A) because that phrase would describe an empty set of offenses.

Pushing back on this conclusion, at oral argument States contended that his interpretation of *Taylor* would not read the

---

[4] States also argues that the elements of the substantive offense cannot matter because if they did, *Taylor* would have addressed the elements of Hobbs Act robbery. This argument is puzzling because *Taylor* did discuss those elements, and they informed the Court's analysis of what a conviction for attempted Hobbs Act robbery entails. *See* 142 S. Ct. at 2020–21.

attempted force clause out of § 924(c)(3)(A). He proposed that there is a distinction between *committing* an offense for which the attempt to use force is an element and *attempting to commit* an offense for which the use of force is an element. In his view, the former may constitute a crime of violence under § 924(c)(3)(A), but the latter may not. He notes that some states' assault statutes fall into the former category. *E.g.*, Idaho Code § 18-901(a) (defining assault as "[a]n unlawful attempt, coupled with apparent ability, to commit a violent injury on the person of another"); La. Stat. Ann. § 14:36 ("Assault is an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery."). But unlike some other contexts in which the categorical approach applies, state convictions cannot serve as § 924(c) predicates. The statute requires a predicate offense to be one "for which the [defendant] may be prosecuted *in a court of the United States*." § 924(c)(1)(A) (emphasis added); *see Taylor*, 142 S. Ct. at 2019 (noting that the predicate must be a "federal felony").

Federal statutes seldom include attempted conduct as an element of a completed crime. Criminal assault statutes do not use this formulation. *E.g.*, 18 U.S.C. § 111(a)(1) (punishing a defendant who "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with [a federal officer]"); *see also United States v. Pruitt*, 999 F.3d 1017, 1027 & n.2 (6th Cir. 2021) (Nalbandian, J., concurring) (listing statutes).[5] At least one

---

[5] Assault under the Uniform Code of Military Justice does incorporate attempt as an element of the completed offense: "Any person subject to this chapter who, unlawfully and with force or violence—(1) attempts to do bodily harm to another person; (2) offers to do bodily harm to another person; or (3) does bodily harm to another person; is guilty of assault and shall be punished as a court-martial may direct." 10 U.S.C. § 928(a). We

statute does list the "attempt[] to cause bodily injury" as an element of a completed crime. 18 U.S.C. § 249(a)(1), (a)(2)(A); *see United States v. Roof*, 10 F.4th 314, 401 n.63 (4th Cir. 2021) (per curiam) (interpreting the attempt clause of § 249(a) as a means of committing the completed offense). But § 249(a) is an outlier. The federal criminal code contains no standalone attempt statute. *United States v. Muresanu*, 951 F.3d 833, 837 (7th Cir. 2020). Federal law punishes attempts "only if the statutory definition of the crime itself proscribes attempts." *Id.* (citation omitted). Further, because attempts and completed offenses are distinct crimes, *Worthen*, 60 F.4th at 1070, a statute that prohibits a crime and the attempt to commit it is likely to be divisible, so we would not consider the attempted crime's elements when determining whether the completed offense is a crime of violence. *See Gamboa*, 26 F.4th at 416; *Haynes*, 936 F.3d at 687; *cf. Roof*, 10 F.4th at 401 n.63 (concluding that attempt is an element of a completed § 249(a) violation because the statute is indivisible).

So while States's reading might not read attempted force out of the statute entirely, it is implausible that § 924(c)(3)(A) incorporates this understanding of attempted force. The text of § 924(c)(3)(A) contains no hint that "attempted use … of physical force" refers only to completed offenses that have attempted force as an element and excludes the mine run of attempts to commit offenses that require the use of force. To agree with States's reading of § 924(c)(3)(A), we would have

---

have previously held that violations of the Uniform Code of Military Justice may serve as predicate offenses for an enhanced sentence under 18 U.S.C. § 924(e), *United States v. Martinez*, 122 F.3d 421, 423–26 (7th Cir. 1997), so it may be that a violation of 10 U.S.C. § 928(a) could be a crime of violence under States's reading of § 924(c)(3)(A).

to conclude that, despite including "attempted use … of physical force" in the statute, Congress excluded all or nearly all attempt offenses from § 924(c)'s definition of a crime of violence. Nothing in *Taylor* suggests this drastic result. We join the Sixth and Eleventh Circuits in concluding that *Taylor*'s holding applies only to attempts to commit crimes that can be completed by threat of force. *Alvarado-Linares*, 44 F.4th at 1346–47; *Martin*, 2023 WL 2755656, at *5–7.

**D. Attempt Offenses and Crimes of Violence**

That brings us to whether attempted murder is a crime of violence under § 924(c). States acknowledges that we have previously held that attempted murder is a crime of violence. *See Hill v. United States*, 877 F.3d 717, 720 (7th Cir. 2017).[6] A completed murder—unlike a Hobbs Act robbery—always requires the use of force, so *Taylor* is not directly on point here. States argues, however, that *Hill* is inconsistent with *Taylor*'s

---

[6] To be precise, *Hill* held that Illinois attempted murder is a "violent felony" under the elements clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(i), but these distinctions do not change our analysis. As to the first, neither party suggests there is a material difference between Illinois attempted murder and § 1114 attempted murder. *See Hill*, 877 F.3d at 720 (observing that *Johnson v. United States*, 559 U.S. 133 (2010), characterized "murder as the paradigm of an offense that comes within the elements clause"). As to the second, § 924(e)'s elements clause is narrower than § 924(c)'s, so any violent felony under the former is also a crime of violence under the latter. *Compare* § 924(e)(2)(B)(i) (defining a "violent felony" as "ha[ving] as an element the use, attempted use, or threatened use of physical force against the person of another"), *with* § 924(c)(3)(A) (permitting the force to be directed at "the person or property of another"). For simplicity, in the remainder of this opinion, we refer to *Hill*'s impact on crimes of violence and § 1114 attempted murder without repeating that we are reasoning by analogy.

reasoning, which is "just as binding as [its] holding," *Bucklew v. Precythe*, 139 S. Ct. 1112, 1126 (2019), so *Taylor*'s reasoning abrogates *Hill*. States is correct to an extent. *Taylor* effectively abrogates some of *Hill*'s reasoning, including one of the bases for its ultimate holding. But *Hill* also contains a separate conclusion supported by distinct reasoning that *Taylor* does not call into question. Under the remaining portion of *Hill*, attempted murder remains a crime of violence.

### 1. *Hill v. United States*

*Hill v. United States* clarified how we analyze attempt offenses under elements clauses analogous to § 924(c)(3)(A). We drew heavily on Judge Hamilton's concurring opinion in *Morris v. United States*, 827 F.3d 696 (7th Cir. 2016), and adopted two of the concurrence's conclusions about how the categorical approach applies to attempt offenses.

First, we concluded that "an attempt to commit a crime should be treated as an attempt to commit every element of that crime." *Hill*, 877 F.3d at 719 (citing *Morris*, 827 F.3d at 698–99 (Hamilton, J., concurring)). The *Morris* concurrence "recognized that the crime of attempt requires only a substantial step toward completion," but a defendant must also "*intend* to commit every element of the completed crime in order to be guilty of attempt." *Id.* The combination of these two elements, the concurrence thought, is sufficient to treat an attempt offense as an attempt to commit each element of the completed offense. *Id.* Thus, "[w]hen the intent element of the attempt offense includes intent to commit violence against the person of another, … it makes sense to say that the attempt crime itself includes violence as an element," making the attempt a valid predicate for purposes of § 924(c). *Id.*; *see Morris*, 827 F.3d at 699 (Hamilton, J., concurring) ("[A]n attempt to

commit a crime should be treated as an attempt to carry out acts that satisfy *each element of the completed crime*.").

Second, we reasoned that since "the fact that a statute contains as an element attempt at physical force suffices to label the crime itself a [crime of violence], it follows that an attempt to commit a [crime of violence] is itself a [crime of violence]." *Hill*, 877 F.3d at 719 (citing *Morris*, 827 F.3d at 689–99 (Hamilton, J., concurring)). From that premise, we concluded that "[w]hen a substantive offense would be a [crime of violence] under [§ 924(c)] and similar statutes, an attempt to commit that offense also is a [crime of violence]." *Id.*

Turning to the facts in *Hill*, we observed that murder is a crime of violence because it requires the use of force. *Id.* at 720. We then held that because murder is a crime of violence, attempted murder is also a crime of violence. *Id.*

### 2. *Taylor*'s Impact on *Hill*

Part of the reasoning supporting *Hill*'s holding is no longer valid, in particular the conclusion that if an offense is a crime of violence, so too is an attempt to commit that offense. *Taylor* rejected the argument "that the elements clause encompasses not only any offense that qualifies as a 'crime of violence' but also any attempt to commit such a crime." 142 S. Ct. at 2021–22. Hobbs Act robbery is an example: the completed offense is a crime of violence, *Worthen*, 60 F.4th at 1067, but an attempt to commit it is not. *Taylor*, 142 S. Ct. at 2020–21.

States argues that *Taylor* also abrogates *Hill*'s separate conclusion that an attempt is treated as an attempt to commit each element of the completed offense. But the only time he mentions that part of *Hill*, he alters our wording in a small but meaningful way. According to States, *Hill* stated that "the

intent element of attempted murder necessarily includes an *intent* to commit all of the elements of the substantive offense." (emphasis added). Although we used similar language in *Hill*, we specifically concluded that "an attempt to commit a crime should be treated as an *attempt* to commit every element of that crime." 877 F.3d at 719 (emphasis added). *Hill*'s logic, to borrow the Eleventh Circuit's phrasing, is that the "definition of 'attempt' is (1) substantial step plus (2) intent," *Alvarado-Linares*, 44 F.4th at 1347 (citations omitted), and proving both of those elements establishes that the defendant attempted to commit each element of the completed offense.

*Taylor* is consistent with this understanding of attempt. As the Court explained, the hypothetical Adam attempted to commit Hobbs Act robbery although "he never even got to the point of threatening the use of force against anyone or anything." 142 S. Ct. at 2021. But Adam "may have intended *and attempted* to do just that." *Id.* (emphasis added). Saying that Adam attempted to threaten force squares with treating an attempt as an attempt to commit each element of the completed crime because threatening force is an element of Hobbs Act robbery. *See* § 1951(b)(1); *Taylor*, 142 S. Ct. at 2021.[7] If the

---

[7] Note that even if a person has the specific intent to commit a crime, if his overt acts amount only to "mere preparation," then he has not taken a substantial step and has not attempted to commit each element of the completed crime. *See Taylor*, 142 S. Ct. at 2020 (citation omitted). Determining what acts constitute a substantial step is a fact-intensive, case-specific inquiry. *United States v. Sanchez*, 615 F.3d 836, 844 (7th Cir. 2010). That inquiry is guided by the principles that (1) it must be "reasonably clear that had the defendant not been interrupted or made a mistake he would have completed the crime," and (2) we measure substantial steps based on the acts the defendant took, not the acts that remained incomplete. *Id.* (internal

offense the defendant attempted to commit required the use of force, not the mere threat of force, then the attempt would have involved the attempted use of force. *See Alvarado-Linares*, 44 F.4th at 1347 ("[W]hen a crime has as an element a substantial step plus intent to use force against another person, that crime has as an element the 'attempted use … of physical force against the person of another.'" (ellipsis in original) (quoting § 924(c)(3)(A))).

States's argument to the contrary is unavailing because he discusses the elements of attempt separately rather than in combination. While *Taylor* stated that "an intention is just that, no more," and that a substantial step need not be violent, 142 S. Ct. at 2020, proof of both elements is what constitutes attempt to commit each element of the completed offense. *See Hill*, 877 F.3d at 719; *Alvarado-Linares*, 44 F.4th at 1347; *cf. United States v. D.D.B.*, 903 F.3d 684, 692–93 (7th Cir. 2018) (holding that Indiana attempted robbery is not a crime of violence because attempt in Indiana does not require proof of intent to commit each element of the completed offense).

To be sure, *Taylor* analyzed whether each element of attempt always entails the use, attempted use, or threatened use of force, spending considerable time on the substantial step element. But the discussion of substantial steps focused on whether the substantial step *itself* satisfied § 924(c)'s elements clause. *See Taylor*, 142 S. Ct. at 2020–21 (explaining that attempted Hobbs Act robbery need not contain a

---

alterations omitted) (quoting *United States v. Gladish*, 536 F.3d 646, 648 (7th Cir. 2008)). The identity and elements of the attempted crime may also matter, as "conduct that would appear to be mere preparation in one case might qualify as a substantial step in another." *Id.* (citation omitted).

communicated threat of force); *id.* at 2022–24 (rejecting the government's argument that "threatened force" should be interpreted broadly enough that the substantial step in every attempted Hobbs Act robbery involves threatened force); *id.* at 2024–25 (reiterating that it is irrelevant under the categorical approach whether most attempted Hobbs Act robberies involve a communicated threat of force).

The Court needed to consider whether the substantial step satisfies the elements clause because attempting to commit the elements of Hobbs Act robbery does not. *See id.* at 2020–21; *Alvarado-Linares*, 44 F.4th at 1347 ("Although the elements clause covers the use of force, the attempt to use force, and the threat to use force, it does not cover *attempts to threaten* the use of force."). If such an attempt involved the force required for a § 924(c) conviction, it would have been unnecessary to analyze whether the substantial step also involves such force. *Cf. Taylor*, 142 S. Ct. at 2020–21 (proceeding to discuss substantial steps only after noting that attempted Hobbs Act robbery can be committed via an attempt to threaten force).[8]

Because *Taylor*'s substantial step analysis focused on that element alone, it does not undermine *Hill*'s conclusion that an attempt constitutes an attempt to commit each element of the substantive offense or the reasoning underlying it. The interaction of the intent and substantial step elements was central

---

[8] In *Alvarado-Linares*, the Eleventh Circuit followed this analytical path. Without considering what conduct constitutes a substantial step, the court concluded that Georgia attempted murder, like federal attempted murder, is a crime of violence. The court reached this conclusion because murder always requires the use of force and attempted murder requires proof that the defendant (1) "had the intent to kill someone" and (2) "completed a substantial step towards that goal." 44 F.4th at 1346–48.

to *Hill*'s attempt analysis. *See Morris*, 827 F.3d at 698–99 (Hamilton, J., concurring) (focusing on the fact that "[a]ttempt requires intent to commit the completed crime plus a substantial step toward its completion"); *Hill*, 877 F.3d at 719 (adopting this reasoning). *Taylor* said nothing about the interaction between these elements and therefore did not reject *Hill*'s conclusion that an attempt constitutes an attempt to commit each element of the substantive offense.[9]

We therefore hold that *Taylor* abrogates *Hill* only to the extent that *Hill* reasoned that "[w]hen a substantive offense would be a [crime of violence] …, an attempt to commit that offense also is a [crime of violence]." 887 F.3d at 719. Its separate conclusion that "an attempt to commit a crime should be treated as an attempt to commit every element of that crime," *id.*, is consistent with *Taylor* and remains good law.[10]

---

[9] States also argues that *Taylor* must abrogate *Hill* because the Supreme Court expressly rejected an Eleventh Circuit case that relied on *Hill*. *See Taylor*, 142 S. Ct. at 2021–22 (abrogating *United States v. St. Hubert*, 909 F.3d 335 (11th Cir. 2018)). True, *St. Hubert* relied on *Hill*, but like States it understood *Hill*'s analysis to be based on intent, not the combination of intent and a substantial step: "As to attempt crimes, the Seventh Circuit observed in *Hill* that (1) a defendant must intend to commit every element of the completed crime in order to be guilty of attempt, and (2) thus, 'an attempt to commit a crime should be treated as an attempt to commit every element of that crime.'" *St. Hubert*, 909 F.3d at 352–53 (quoting *Hill*, 877 F.3d at 719). But as noted above, *Hill* reasoned differently, so *St. Hubert*'s abrogation does not affect the validity of *Hill*'s alternative conclusion.

[10] Because this opinion recognizes the partial abrogation of *Hill*, it has been circulated among all judges of this court in regular active service pursuant to Circuit Rule 40(e). No judge voted to rehear the case en banc.

### 3. Application

Applying these principles to States's attempted murder conviction is straightforward. The government proved that he intended to kill a federal officer engaged in his official duties and took a substantial step toward that end. *See* 18 U.S.C. §§ 1113–1114; *Taylor*, 142 S. Ct. at 2020. When the government must prove the defendant intended to commit each element of the completed offense, we treat the attempt conviction as an attempt to commit each element of the completed offense. *Hill*, 877 F.3d at 719; *D.D.B.*, 903 F.3d at 692–93. Murder always entails the use of physical force against another person. *Hill*, 877 F.3d at 720.[11] It follows that an element of attempted murder is the "attempted use … of physical force against the person or property of another," § 924(c)(3)(A), making attempted murder a valid § 924(c) predicate. *See Martin*, 2023 WL 2755656, at *5–7. Thus, we affirm States's conviction for using a firearm during and in relation to a crime of violence.

---

[11] Felony murder, in contrast, does not categorically involve the use of force within the meaning of § 924(c). Under federal law, felony murder is a killing during the commission of one of the offenses enumerated in 18 U.S.C. § 1111(a), and that killing can be unintentional. *Dean v. United States*, 556 U.S. 568, 575 (2009); *United States v. Delaney*, 717 F.3d 553, 556 (7th Cir. 2013). Thus, felony murder does not have as an element the "use … of physical force" because § 924(c)(3)(A) requires the purposeful or knowing application of force. *See Borden v. United States*, 141 S. Ct. 1817, 1825–28 (2021) (plurality op.) (interpreting analogous language in § 924(e)(2)(B)(i)). The definition of felony murder is immaterial here, however, because § 1111(a) is a divisible statute that criminalizes both murder and felony murder, different crimes with different elements. *See Gamboa*, 26 F.4th at 416; *United States v. Jackson*, 32 F.4th 278, 286 (4th Cir. 2022) (holding that § 1111(a) is divisible). States's crime is attempted murder.

### III. Grouping

The second issue on appeal concerns sentencing. While calculating States's Sentencing Guidelines range, the district court did not group Count Group 1 (drug trafficking offenses) and Count Group 2 (kidnapping Ramon). States argues that U.S.S.G. § 3D1.2(c) required grouping these counts.

We review the district court's application of the Sentencing Guidelines de novo. *United States v. Lomax*, 51 F.4th 222, 228 (7th Cir. 2022). Application notes to the Guidelines are not mere commentary. *United States v. Carnell*, 972 F.3d 932, 939 (7th Cir. 2020). They are analogous to agencies' interpretations of their own regulations, *Stinson v. United States*, 508 U.S. 36, 44–45 (1993), which may be entitled to *Auer* deference (also called *Seminole Rock* deference). *See United States ex rel. Proctor v. Safeway, Inc.*, 30 F.4th 649, 662 n.19 (7th Cir. 2022), *vacated on other grounds*, 143 S. Ct. 1391 (2023). Thus, we have held that an application note accompanying a guideline "is binding authority 'unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.'" *United States v. Smith*, 989 F.3d 575, 584 (7th Cir. 2021) (quoting *Stinson*, 508 U.S. at 38).[12]

---

[12] We may need to revisit our decisions on this subject in light of *Kisor v. Wilkie*, 139 S. Ct. 2400 (2019). *Kisor* clarified that *Auer* deference can apply "only if a regulation is genuinely ambiguous" after "resort[ing] to all the standard tools of interpretation" and that not all agency interpretations of ambiguous regulations are entitled to deference. *Id.* at 2414. But we leave the question of *Kisor*'s effect on *Stinson* and our circuit precedent for another day. *Kisor* does not expressly dictate a result in this case, the parties have not briefed the issue, and as discussed below, we have previously interpreted the guideline relevant to this appeal. *See United States v. Lewis*,

**A. Grouping Under U.S.S.G. § 3D1.2(c)**

Introductory commentary to the grouping section of the
Sentencing Guidelines Manual explains that the purpose of
grouping is "to provide incremental punishment for signifi-
cant additional criminal conduct." U.S.S.G. Ch.3, Pt.D, intro.
comment. Grouping also "prevent[s] multiple punishment

---

963 F.3d 16, 24 (1st Cir. 2020) (declining to revisit a guideline interpretation
in light of *Kisor*'s clarification of *Auer* deference).

This issue has also divided our sister circuits. Several circuits have
concluded that *Kisor* applies to the Guidelines. *United States v. Nasir*, 17
F.4th 459, 469–71 (3d Cir. 2021); *United States v. Riccardi*, 989 F.3d 476, 483–
85 (6th Cir. 2021); *United States v. Castillo*, 69 F.4th 648, 657–62 (9th Cir.
2023); *United States v. Dupree*, 57 F.4th 1269, 1273–77 (11th Cir. 2023) (en
banc). One circuit has held that it does not. *United States v. Maloid*, --- F.4th
----, 2023 WL 4141073, at *7–15 (10th Cir. June 23, 2023). Panels of another
circuit have reached divergent conclusions. *Compare United States v. Camp-
bell*, 22 F.4th 438, 445 n.3 (4th Cir. 2022) ("*Kisor* cited *Stinson* …, making
clear that the[] modifications to *Seminole Rock/Auer* deference apply
equally to judicial interpretations of the Sentencing Commission's com-
mentary."), *with United States v. Moses*, 23 F.4th 347, 352 (4th Cir. 2022)
("[W]e conclude that even though the two cases addressed analogous cir-
cumstances, *Stinson* nonetheless continues to apply when courts are ad-
dressing Guidelines commentary, while *Kisor* applies when courts are ad-
dressing executive agency interpretations of legislative rules."); *see Moses*,
23 F.4th at 359 (King, J., dissenting in part and concurring in the judgment)
(noting this inconsistency). And one full circuit court has taken up the is-
sue. *United States v. Vargas*, 35 F.4th 936 (5th Cir. 2022), *reh'g en banc granted,
opinion vacated*, 45 F.4th 1083 (5th Cir. 2022) (mem.) (argued Jan. 23, 2023).

Further, the Sentencing Commission is aware courts are wrestling
with this issue, and in response it has proposed moving the content of cer-
tain application notes to the main Guidelines text. *See* Notice of Submis-
sion to Congress of Amendments to the Sentencing Guidelines Effective
November 1, 2023, and Request for Comment, 88 Fed. Reg. 28254, 28274–
76 (Proposed May 3, 2023).

for substantially identical offense conduct" by avoiding the multiple-sentence enhancement that would otherwise apply. *Id.*; *see also United States v. Curtis*, 66 F.4th 690, 692 (7th Cir. 2023) (discussing the policy underlying grouping).

The guideline at issue in this appeal is U.S.S.G. § 3D1.2, which requires grouping counts "involving substantially the same harm." The relevant provision provides that offenses involve substantially the same harm "[w]hen one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts." § 3D1.2(c).[13] Application Note 5 clarifies that § 3D1.2(c) "applies only if the offenses are closely related." *See United States v. Vucko*, 473 F.3d 773, 779 (7th Cir. 2007) ("[C]rimes … must be 'closely related' to be grouped under § 3D1.2(c) according to the commentary.").[14]

All agree that "closely related" refers primarily to the defendant's offense conduct, not only to the harm caused by his offenses. This understanding ensures that Application Note 5 and the main text of § 3D1.2 perform distinct functions. Because § 3D1.2(c) defines "substantially the same harm," if

---

[13] Specific offense characteristics, listed for each category of offense in Chapter 2 of the Guidelines, and adjustments, listed in Chapter 3, modify a defendant's offense level based on a wide range of factors.

[14] States points out that in *Vucko*, we held that the specific offense characteristic at issue was "too broad to require the conclusion that it encompasses [the other offense] in particular," 473 F.3d at 779, which he interprets to mean that the "closely related" requirement kicks in only if it is uncertain whether § 3D1.2(c) should apply. We disagree. *Vucko*'s discussion of the breadth of the specific offense characteristic does not change its conclusion that Application Note 5 only permits closely related offenses to be grouped under § 3D1.2(c). *See* 473 F.3d at 779.

Application Note 5 also turned on the harm caused by offenses, it would either duplicate or modify the effect of § 3D1.2(c)'s text. This understanding is also consistent with grouping's goal of "prevent[ing] multiple punishment for substantially identical offense conduct." U.S.S.G. Ch.3, Pt.D, intro. comment. While harm may be relevant to the analysis, the "closely related" requirement primarily concerns the defendant's conduct. *See Vucko*, 473 F.3d at 779 ("These two counts fail [the 'closely related'] test. Vucko committed two different crimes, causing two different harms and harming two different victims. She did so at different times through different actions.").

**B. States's Offenses**

The district court declined to group Count Group 1, the drug trafficking offenses, and Count Group 2, the counts related to the kidnapping of Ramon. It disagreed with States "that one [count group] actually encompasses the other," finding that "[t]he kidnapping count with respect to a particular individual is such a different occurrence in every way" from the drug convictions. States contends that these count groups are closely related and each incorporates the conduct of the other through a specific offense characteristic or adjustment, so § 3D1.2(c) requires grouping. He argues that he participated in Ramon's kidnapping solely to further the drug trafficking conspiracy, and his only significant drug trafficking conduct was the kidnapping. In his view, his offense conduct overlaps so much in timing and purpose that Count Groups 1 and 2 should have been grouped.

Like the district court, we conclude that grouping these offenses would be improper. States helped kidnap and hold Ramon for two days in July 2001, but he also worked with the

Carman Brothers Crew for a substantial part of July and August 2001. And although States's primary role with the Crew was kidnapping, he participated in other drug-related conduct, such as cooking cocaine into cocaine base. Drug-possession offenses involve very different acts than kidnapping, extortion, and robbery, and even recognizing the relatively minor direct role States played in the Crew's drug trafficking activity, he is culpable for his coconspirators' conduct in furtherance of the conspiracy. *See, e.g.*, *United States v. Jones*, 900 F.3d 440, 446 (7th Cir. 2018). The drug trafficking crimes in Count Group 1 involve a broader range of conduct committed over a greater time period, inflicting diffuse harm on society. In contrast, the kidnapping in Count Group 2 took place over a shorter time span, and the criminal conduct inflicted direct harm on a single victim. These offenses are not closely related. *See Vucko*, 473 F.3d at 779 (holding that offenses were not closely related when they involved different victims, harms, conduct, and time periods).

States counters that failing to group these counts would render § 3D1.2(c) superfluous. He asserts that under our interpretation of "closely related," if it is proper to group counts under § 3D1.2(c), then those counts would also group under a different Guidelines provision. Grouping under § 3D1.2(c) depends on the specific conduct at issue, though. While States's kidnapping and drug trafficking offenses are not closely related enough to group, it is possible that similar offenses would group in another case. But even if States is correct, and § 3D1.2(c) rarely results in grouping offenses that would not also be grouped by a different provision, that would not change the outcome here. The plain meaning of Application Note 5 makes clear that offenses being closely related is a prerequisite for grouping under § 3D1.2(c), *Vucko*,

473 F.3d at 779, and that meaning is not "inconsistent with" § 3D1.2(c), nor "a plainly erroneous reading of" the guideline. *Smith*, 989 F.3d at 584 (quoting *Stinson*, 508 U.S. at 38).

The conduct embodied by Count Groups 1 and 2 is not closely related enough to permit grouping under § 3D1.2(c), so the district court did not err by declining to group these counts.[15]

## IV. Conclusion

The district court correctly held that attempted murder of a federal officer is a crime of violence within the meaning of § 924(c)(3)(A) and that States's drug trafficking and kidnapping offenses could not be grouped under U.S.S.G. § 3D1.2(c). States's conviction and sentence are therefore

AFFIRMED.

---

[15] Because offenses being closely related is a prerequisite for grouping under § 3D1.2(c), we do not reach the issue of whether the specific offense characteristics and adjustments contained in Count Groups 1 and 2 would have required grouping if the counts had been closely related.